Good morning everyone. Well you're really ready to get started. Our first case has been submitted so the next case for argument is Bare v. Barr. Good morning may it please the court my name is Corrie Hong and I represent petitioner Ibrahim Bare. I will start with the withholding issue and then turn to the adjustment issue. On the withholding the BIA made two errors in properly in not properly applying Francescu's directive to look first at the nature of the offense which is defined as the elements of the crime before determining if it is particularly serious or not. Now first I am not arguing that the categorical approach applies to particular serious crime inquiry. It absolutely doesn't. That is clear. Facts absolutely can and should be relevant at step two. But the key issue in this case is that Francescu and Nam both say that at step one the agency must first look to the elements of the crime. If the elements involve the potential for violence injury endangerment proceeds to step two. But if the elements do not involve violence injury endangerment quote the individual facts and circumstances of the offense are of no consequence and the alien would not be barred from a grant of withholding a removal unquote. Here a firearm is a pure status crime. It is a rare crime. It is well counsel this is a felon who managed to shoot up the house in front of his family. Can't we take can't the IJ take that into account? They could as a matter of discretion but when it comes to this issue where we look at the crime he can't. Yosefi is the authority for that. Where Yosefi looks at this inquiry conviction is what's relevant. And so any alleged or hypothetical crime that was actually not not charged and not convicted is not relevant at step two. Again for reference step one is the first error that we have to have the agency be bound by its own wording. But if we do present the cases do call for looking to the element of the offense. But if we look at the I don't see anywhere where it requires an explicit discussion of the offense. And here it's a relatively straightforward crime. A felon in possession of a firearm. Do we require that the IJ explicitly discuss every element? Even for something as straightforward as felon in possession? Well yes. Francescu and Nam says itself. That's what the nature of the offense the elements do and the wording and in the own decision says that if the elements fall outside of something that can be endangering it is no consequence and the person is not barred. On that second step if the court disagrees and it proceeds to the factual inquiry. Again the better resolution of this is the Yosefi case in the fourth circuit. Where again Nam says quote does not call for consideration of conduct that is unrelated to the crime. The analysis has to be related to the facts and the evidence supporting the elements of conviction. Now here there's no aggravating factors arising from the gun or the ammunition of the crime. There were two rifles and a handgun. It wasn't a machine gun. It wasn't an arsenal of hundreds of guns. It wasn't a sawed off shotgun. And you say we're not allowed to take into account the gun was actually fired in front of the person's family? According to Yosefi we can't because the regulatory authorities under 8 U.S.C. 1331 B.3.B.2 which only which limits this inquiry to conviction and 8 C.F.R. 204 240.10 says that the D.H.S. has to lodge notice and lodge the charges that are issued. Your position is that if it's a non-violent crime that the person's convicted of you can't look at the background and the circumstances of the whole crime at all? Well, there are two arguments. That's my first argument. And my authority for that is the wording and the language of Francescu and NAM itself where they say that of the four factors the first one is the nature of offense. And it explains that that meaning is that we look to the elements and if the elements, as you said, Your Honor, are not violent it ends. Francescu, if I'm pronouncing it correctly, seems to say though that you can look at the circumstances of the crime, right? At step two. That's the second factor. So that is the second error. So if the court disagrees with me on the first error, even if we go to the second error, as Yosefi says, we still have to look at the conviction not the conduct. The particularly serious crime inquiry cannot be just a bad person inquiry. That is relevant at different points in immigration law. That'd be relevant for exercise of discretion for asylum. It'd be relevant for exercise of discretion in adjustment. But those discretionary factors cannot be unmoored from the word a conviction, which is relevant to whether there's something particularly serious crime, not particularly serious conduct, or particularly serious bad guy, which is what this turns into otherwise. But the risk of harm that comes from firing a firearm, you're saying that's completely irrelevant, untethered to the possession of a firearm? It is because he wasn't charged with that. For some reason, the prosecutors reviewed these allegations and did not deem them worthy enough or adequate enough or sound enough to actually bring charges. And this is different than Francescu itself. In Francescu, the question was whether it was a burglary. And Francescu said, well, there are instances where a burglary could be particularly serious and instances where they weren't. And there Francescu said, well, let's look at the facts. And there they said, look, this burglary was of a residence, and that's bad, but also the person wasn't armed, the residence wasn't occupied, so then it kicks into not being a particularly serious crime. But they focused only on the elements of the crime, which was burglary. They did not look for his past for every single moral misstep. And this is an important limitation, because what happened in this briefing itself, if the government is given license to just make this a bad person inquiry, what the government did to this court, they said, yes, even though the agency hasn't considered the decision at Bexar II, I'm going to introduce it and bring in more bad conduct and more speculation, more evidence, because I want to. So that is . . . If it had gotten, what, five or six more months, it would have been a particularly serious crime anyway, right? What . . . I'm . . . excuse . . . If the defendant had, or the petitioner here, had gotten a slightly higher sentence, it would have been particularly serious, right? Yes, it would have been per se. Six more months or whatever it was. Absolutely. It would have been a per se, and then we're at a whole different inquiry. But because it wasn't, we do have to apply the rules that apply to this lesser category. Counsel, what do we do with our Anaya Ortiz Beholder case? Well, Your Honor, that is distinguishable, because that went straight to Step 2. So the first error, looking at the nature of the offense . . . Aren't you arguing that we can't go straight to Test 2? Well, we start at Step 1, the nature of the offense. But even if we go to Step 2, which is what Anaya Ortiz . . . Yeah, but take me through Anaya. Okay. Is Anaya . . . Did Anaya make a mistake in not going to Step 1? No. There, the parties did not allege any error at Step 1, which is different from this case. This is the only case where said we start . . . the error started at the nature of the offense. In Anaya Ortiz, they agreed that the lewd conduct of a child falls, meets the elements at Step 1, and so then you can look at Step 2. So that is how that case is distinguishable, and a holding here would not disturb that in any way. Now, turning to the adjustment issue, there are also two reasons why the court should remand to let the IJ consider the adjustment application. First, the regulations support Mr. Baer's position that an asylee's status is terminated and returned to regular removal proceedings that do not prohibit adjustment. That is 8 CFR 1208.24 E, F, and G. There, the use is the word shall. This is mandatory. It's not discretionary, and there's no directive or provision . . . . . . in the proceeding, is it not? No, Your Honor. This is the issue of the confusion. The IJ decision itself at page 76 identifies it as being a removal proceeding, regular removal proceedings, and the authority for that is this regulation, 8 CFR 1208.24. Now, what the confusion arose when the DHS . . . the regulations say that when someone commits an aggravated felony, the DHS is supposed to file notice of termination, which is in this regulation. The DHS captioned it as a motion to reopen, but that is the . . . that caption doesn't have any magical meaning. The regulations do. Now, the BIA, in its caption, it turned it into an asylum-only proceedings, but its authority was 1208.2 C.1.2, and that regulation says stowaways are exempted from regular removal proceedings. That does not trump, and that has no bearing here, because Mr. Baer . . . But isn't this a stowaway case? No, Your Honor. In 2016, he had been granted asylum. He was granted asylum in 1997. As the government twice argued in its brief, he could have applied for a green card beginning in 1998. You can only get a green card if you are an asylee. And there are two authorities that support this. In the matter of K.A., there, the asylee was in the same situation where the DHS alleged that the aggravated felony terminates status. And there, the I.J. granted adjustment without dealing with the termination. On appeal, the DHS said this was wrong, they needed to terminate. The BIA said no, the I.J. has discretion to just grant adjustment without even terminating status. So he was an asylee at that time. On the second point . . . And we'll hear from the government, but your argument is that this is no longer an asylum-only proceeding. It started out as that, did it not? Yes, Your Honor. In its capacity as a stowaway? Absolutely. Okay. And you say at some point, it evolved into a full removal proceeding? The magical moment was when he was granted asylum. In an 11-558, that statute says you turn into an asylee. K.A. said that when someone's alleged to have that terminated, the I.J. has the discretion to grant asylum without termination. So there's no . . . they did not have to do that. And the Fifth Circuit in Seawee had the same situation where they said, look, under the statutes and the regulations, the I.J. has the authority to determine which remedy it wants to deal with first. It absolutely has the discretion just to status. And now the difference is that I have the regulation, I have K.A., I have the Fifth Circuit decision. The DHS says it has no authority for its position that wants a stowaway, always a stowaway. That actually defies logic because they said themselves that he could have become a citizen, he could have gotten a green card. And the only way you do that is that if your status becomes an asylee at the moment he was granted asylum. Do you want to save some time? Yes, Your Honor. Thank you. Good morning, Your Honors, and may it please the Court, Michael Heiss on behalf of the Respondent, the Attorney General of the United States. The agency here properly exercises its discretion to find that petitioner's conviction constituted a particularly serious crime, as well as that the immigration judge lacked jurisdiction over his adjustment of status application, given that he was in asylum-only proceedings. First, with respect to this elements-based inquiry that petitioner is arguing for, that was not first presented to the agency, so that's unexhausted. Yes, petitioner challenged how the agency went about finding that his crime constituted a particularly serious crime, but this argument is quite specific, and if it is to be alleged as an error, the agency should have the first opportunity to address it, given that this Court has given wide latitude to the agency in terms of the particularly serious crime. Therefore, we remand per ventura or not? No. If the Court finds that the failure to consider the elements requires a specific discussion, which it never has before, then yes, the Court should be allowed to, or excuse me, the Board should be allowed to do so in the first instance, but however that's simply not. So what you're saying is it was never exhausted? This particular argument, yes. Did you raise the exhaustion issue in your brief? Yes. Assuming that this Court does review or consider exhaustion generously with respect to questions of law, and whether or not the agency properly applied its standards is a question that the Court can consider de novo. So assuming the Court will consider these points, nonetheless, the question is whether or not the Court is going to essentially overlay a categorical approach inquiry to the particularly serious crime inquiry. Petitioner claims that he's not doing that, but that's exactly what he's doing. To require the agency to specifically discuss the elements of the crime is simply not something the Court is required to do. Well, let's assume that it's not a categorical approach. Is there any indication on the record that the IJ gave consideration to the elements of the offense? The IJ did not expressly discuss the elements of this conviction or that that sentence does not appear. There's no explicit discussion, but is there any indication that there was implicit consideration of the elements? Absolutely. Pages, administrative record pages 90 and 91, the immigration judge discusses all of the circumstances of this case. With respect to those circumstances, those were brought into issue by the Petitioner, so the issue of what exactly happened there certainly matter. Again, this Court in Guerrero acknowledged that the particularly serious crime inquiry is an imprecise line-drawing exercise. Was that brought up by the immigration judge or by the BIA analyzing the elements as a particular serious crime? The elements specifically? No. Because it wasn't raised to the agency to do so, given the nature of the particularly serious crime inquiry. That's Frentescu, that's NAM talking about what the agency is supposed to consider. And again, in NAM and as this Court has endorsed, the agency can consider all relevant information, including information outside of the record of conviction. That's explicit in the Court, limit the Board to looking, taking this first step, looking solely at the elements, simply doesn't make any sense with respect to how the agency carries out this inquiry. And that's consistent with Blandino-Mendino, this Court's decision in 2013, which questioned NAM to the extent that it held that the agency could explicitly find that a crime was a particularly serious crime based solely on the elements. So that has to go both directions. The agency has to consider everything here. And the facts of this case patently show that being a felon in possession of a firearm is indeed a particularly serious crime. And that makes, entirely makes sense, given the seriousness of the right involved. In Binder Up versus the United States Attorney General, the Second Circuit noted that the right to bear arms is a fundamental right. So taking it away is not something that's done lightly. A conviction that involves that is inherently serious. To require the agency to expressly discuss that simply doesn't make any sense. So you're not arguing, are you, that felon in possession is always a serious crime? No. It certainly, again, the Eighth Circuit in the 28-J letter that I cited, or provided the Marombo case, found that this crime is indeed, or I believe that was a Minnesota conviction, but nonetheless, being a felon in possession of a firearm qualified as a particularly serious crime. Well, the petitioner here suggested that the crime there was something like a sawed-off shotgun or machine gun, that sort of thing. Is that correct, or do you know? I can't recall expressly what the gun there was, but the point is that— Does that make any difference? I'm sorry? Does that make any difference, that it's more aggravated because it's a machine gun or something like that? It certainly could, but that's the point of the particularly serious crime inquiry, because the court or the board is not required to engage in this kind of categorical or even modified categorical analysis. In the modified categorical analysis, the board and the agency is limited to judicially noticeable documents, cannot go outside of the record of conviction, cannot relitigate the conviction. What we have here is the agency evaluating the full record of this case, which, as I believe all of you have noted, involves some very serious events, including actually firing the weapon. It doesn't matter that he was not charged with that particular crime. That was the subject of his sentence enhancement, which this court adjudicated in a published decision, and I only raise that here given that petitioner is raising this claim in terms of the elements of the crime. His sentence is certainly a factor that the agency has to consider, and that he was subjected to a 57-month sentence for this crime. There has to be a reason for that, and that was because he was running an illegal pawn shop out of his home, fired a weapon at someone on an Indian reservation. Counselor, I'm interested in these cases. You heard counsels cite Francesco, NAM, and the Josefa case. Would you mind responding to her direct arguments on those cases? Any particular portions of them? I mean, the way it's evolved in terms of those cases, this court has endorsed, again, a very broad and discretionary inquiry for the agency, so I'm not sure exactly which. She relies on Francesco. What's your response? I believe her argument is that it mentions relying on the elements. Yeah. Yes. NAM repeats that. NAM repeats that the agency should look at the elements. Okay. But I want you to go directly to her point. Her point is that that should have happened here. Why is she right, or why is she wrong? She's wrong because the court has never acquired that explicit analysis of the elements and actually faulted the agency for stopping itself at the elements. Is that where ANIA comes in? ANIA certainly falls into that category inasmuch as ANIA involved a DUI conviction. On its face, a DUI conviction is not going to be particularly serious, but the court agreed that the agency properly exercised its discretion in that case because the facts of the case involved that individual being so drunk that his car drove through a house. Again, that's the fact-specific inquiry that is permitted under the particularly serious crime inquiry. Again, we're not limited, the agency is not limited here to this categorical and modified categorical analysis, and the court has consistently endorsed that and faulted the agency if it stops at the elements. What's the best case out of the Ninth Circuit that supports that very point that you're making now? The best case out of the Ninth Circuit? Probably Guerrero describing how the agency is given wide latitude and that this is an imprecise line-drawing exercise. That's 908 F. 3rd at 545 is where that quote comes from. Can you address the adjustment of status application? Certainly. With respect to adjustment, the petitioner is correct that under the regulations, differing results occur. The critical point is that when an individual is granted asylum, that is not an admission. They are not admitted to the United States. That's a matter of VX 26 INN decision 147. But if you just read the language of 1208.2, and in particular 1208.2 subsection C, that applies to asylum applications only, so it applies to stowaways who apply for asylum. It doesn't address the situation where a stowaway had been given asylum and now, years later, is up for an adjustment of status. He has asylum or had asylum, and once that's terminated, the question becomes, what is he now? And under 8 CFR 1208.24 G, he is placed into asylum-only proceedings. Petitioner mentioned in the affirmative argument that the immigration judge stated that he was put into removal proceedings. I believe it's Administrative Record page 77, the immigration judge explicitly says that it's asylum-only proceedings, not removal proceedings. All right. So it's your argument, then, in essence, once you're a stowaway, you're always a stowaway, regardless of whether the government had previously granted asylum status? Once asylum is taken away. So if you're a stowaway... Then you're back to square one and you're treated as a stowaway again. That's the government's argument. Right. The cases that petitioners are relying on, matter of K.A. and Seaway, I believe it's from the 8th Circuit, if I remember correctly, 5th Circuit, excuse me, both of those individuals had been admitted. And it's crucial for adjustment of status that you be admissible to the United States. They were already in full asylum proceedings? Is that... They had actually been admitted. They had been inspected by immigration officials upon their entry into the country as a stowaway. Full removal is what I'm... Right. Right. 240 proceedings. Right. Okay. Under... Stowaways receive special treatment as well. The INA is explicit about this. 8 U.S.C. 1225A2, quote, in no case may a stowaway be considered an applicant for admission or eligible for a hearing under 1229A. 1229A being 240 proceedings. Well, he received asylum right there. Right. Specific. But so you're saying he's not eligible for adjustment of status? Correct. Because he was never admitted. Once this... He could have been admitted. He could have taken steps to obtain a green card and actually after that even naturalized as a citizen. But he never did that. Instead, he engaged in an excessive course of criminal conduct that ultimately prevented him from being eligible for anything. Again, the critical difference is that he was never admitted to the United States. Asylum is not an admission that's expressly stated in matter of VX. And that there's simply no question about that. What does asylum give him the right to do once he got that? Just... Does he have to take steps to go further? Yes. After he's been here for a year, he would be... Would have been eligible to pursue a green card. He didn't do that. He instead ran an illegal pawn shop out of his home and illegally possessed a firearm and fired that weapon at someone among several other convictions. So he comes in as a stowaway and then is subject to the expedited proceeding where he's in asylum only proceedings. And you're saying that despite the fact that asylum was granted and he could have applied for adjustment of status, at this point he can no longer do so? Correct. Because he's no longer an asylee. Well, when did that happen? When did he lose his asylum status? When DHS moved to reopen and that motion to reopen was granted. That specific proceeding accomplishes that? There's no due process review of the removal of the status? There's a proceeding to determine whether or not... Is that a separate proceeding or did it all happen in this one? I believe that all happened together. It was all part of this... This proceeding? Proceeding, yes. There's a motion to reopen that DHS files, and then after that the alien can seek removal relief. In this case it would be exclusion relief, which he did. He sought withholding of removal, and that's why we're talking about the particularly serious crime. He can also seek deferral of removal under the... But what is it that terminates his asylum status as an asylee? Well, it's two things. His conviction for a crime, in this case an aggravated felony. But that doesn't automatically trigger it. It takes some action by the DHS, presumably. Right. DHS has to file... And what was that action? Well, three steps then. Conviction, DHS filing the motion to reopen, and then the immigration judge granting DHS's motion to reopen to terminate his asylum status. It's the IJ's ruling which terminates the asylum status. Is that correct? Yes. But that was subject to review by the BIA, was it not? And isn't that this very case? Subject to review the termination of asylum status? Yeah. I don't believe Fishner is challenging the termination of his asylum status. All right, okay. But the order is important under your argument, isn't it, for purposes of determining whether he is eligible for adjustment of status? Because as an asylee, if he is still in asylum status as an asylee, then he's eligible for adjustment of status. Under the regulations, it's 8 CFR 1208.24G, discusses what happens to this particular individual. He is placed into asylum-only proceedings. Upon arrival as a stowaway to the United States. That happened. That's not disputed. That's a different regulation, Your Honor, if I may. I'm sorry, Your Honor. No, I understand that, but I'm trying to pick up from the point where he was already granted asylum. Right. And he's an asylee who's eligible to apply for adjustment of status, right? Right. Now, you mentioned that the government filed a motion to reopen, but that doesn't automatically terminate his asylum status. No. There still has to be a process. Yes. So, during the pendency of the motion to reopen, he still is an asylee who's eligible for application of adjustment of status, is he not? Correct. But once the immigration judge determines that he's no longer an asylee, then he's not. But does that happen after consideration of the adjustment of status application? It did not. Again, this is – And the reason it didn't in this case was because the IJ thought that he was a stowaway who is subject to an asylum-only proceeding. Is that right? As an asylee who was a stowaway, once his asylum status is terminated, he is not. Once it's terminated. Maybe we're talking past each other here. If we decide that the IJ was wrong in determining that he's ineligible for applying for adjustment of status and we send it back, can the IJ consider his adjustment of status application prior to terminating his status as an asylee? That would conflict with the regulations, but if the court finds that the order of operations here was in error, then, yes, the immigration judge can consider his eligibility based on that. Again, that would be rendering 8 CFR 1208.24G superfluous. Right. Setting aside that argument, though, if you weren't a stowaway and you're an asylee and you apply for adjustment of status in a proceeding where the government is trying to terminate your status as an asylee, can the IJ take up the adjustment of status application first? That's a matter of KA, but, again, that's individuals that were admitted, that were admissible. Again, there's two regulations here. There's 1208.2C, which Your Honor was mentioning before, talks about asylum-only proceedings for stowaways. 8 CFR 1208.24G talks about what happens for arriving aliens, which he becomes once his asylum status is terminated. All right. If his asylum status isn't to be terminated before he's allowed to apply for adjustment of status, then, yes, he's an asylee, and under KA he would be allowed to pursue adjustment of status. All right. We've taken you over your time. Do you have any additional questions? No. Thank you, Counsel. Thank you, Your Honor. I have three points on the exhaustion issue at 42 and 43 of the record. Mr. Baer argued to the BIA that, quote, the IJ, quote, Under this Court's authority, a noncitizen need not raise this precise argument when the general claim is raised, and as argued in the briefing that this puts the IJ on notice and the BIA notice that they fail to comport with the rules of Francescu and NAM that say at step one you start at the nature of conviction. Second point. Right now my brother said that subsection G determines Mr. Baer's fate. I'd like to bring that to the Court's attention. It says termination of asylum for arriving aliens. If the service determines that the applicant who has previously been granted asylum is inadmissible, the service shall issue a notice to intent to terminate asylum and initiate removal proceedings under section 240. So even under the government's new argument today, under subsection G we still get to regular removal proceedings. Third, Judge Wynn, to answer your point, yes, there is no requirement that the IJ has to terminate proceedings first. That is exactly what happened in K.A., where the judge decided to grant adjustment without terminating proceeding. The D.H. said this is air, you can't do that. And the BIA cited two regulations under 1209 under the waiver provision and said there's absolutely nothing mandatory that requires termination, that it is discretionary that they may do it, and so therefore they affirmed the IJ's decision to adjust status and grant the 209 waiver without termination. CWE addresses questions straight on. That was from the Fifth Circuit, and the Fifth Circuit said yes, there's absolutely no ordering to these remedies. And the IJ there made the exact same error here, which is the IJ had the mistaken belief that they had to terminate proceedings when they didn't, and therefore the adjustment application could have been considered. Is that discretionary with the immigration judge? With the adjustment application? Yes. Yes. Which order? The order is completely discretionary, and the IJ can make the decision. Here on remand, then the correct remedy is for the court to remand the IJ, to let the IJ make that decision. The IJ was under the mistaken belief that she had to terminate proceedings, which is what KA and CWE say is not required by the statute or the regulations. But if we were to remand, would that change the results? The IJ corrects the error which you assert. Would that change the result? Well, Your Honor, yes, because the IJ never even considered the adjustment. This individual has been in the country. He came here after being conscripted as a child. The question is whether that issue can be reached. Absolutely, because he's eligible for adjustment. There's no question about that. He has three U.S. citizen families, has a citizen spouse. So he has equities that absolutely are relevant to whether he would be granted. Well, this is a highly procedural case, and the question is can that occur in this proceeding? And we've heard back and forth why it may or may not. You can always apply for adjustment of status. There's no bar to that, is there? Well, Your Honor, the IJ says there is a bar because she was compelled to terminate proceedings first or, I'm sorry, to terminate asylum status and that he was in asylum only. The IJ misread the regulations to say that there is a bar to adjustment. All right. Thank you very much, counsel. Thank you. The matter is submitted for decision.
judges: O'scannlain, Siler, Nguyen